Filed 5/26/23  In re Shane P. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Shane P., a Person Coming Under Juvenile Court Law. | B319182 |
| | (Los Angeles County Super. Ct. No. DK18397A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| A.P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Affirmed in part; remanded with directions in part.

Law Office of Marissa Coffey and Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

The only disputed issue in this appeal is whether the juvenile court erred by not entering a visitation order appellant-mother A.P. failed to request.[1]  We conclude it did not err.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Court Removes Shane From Mother*

In July 2016, DCFS filed a petition under Welfare and Institutions Code section 300, subdivision (b)(1),[2] on behalf of Shane (born June 2006), alleging that Mother's mental and emotional problems rendered her unable to provide regular care and supervision for the child.  In August 2016, Mother filed an ICWA-020 form, indicating potential Cherokee ancestry.  Also included in the record is a form containing handwritten notes stating Mother potentially had both Cherokee and Blackfoot ancestry.  In August 2016, DCFS mailed ICWA notices to the Bureau of Indian Affairs, the Blackfeet Tribe of Montana, the United Keetowah Band of Cherokee Indians in Oklahoma, the Cherokee Nation, and the Eastern Band of Cherokee Indians.

In September 2016, the court sustained the petition, declared Shane to be a dependent of the court, and removed him from Mother.  The court

---

[1]    The other issue in this appeal is whether the juvenile court erred in finding the Indian Child Welfare Act (ICWA) inapplicable when respondent Los Angeles County Department of Children and Family Services (DCFS) failed to send out proper ICWA notices to the tribes in which Mother was potentially a member.  DCFS agrees there is no evidence in the record showing it ever sent proper ICWA notices and therefore concedes the propriety of a remand "for compliance with the ICWA inquiry and notice provisions."  We agree.

[2]    Undesignated statutory references are to the Welfare and Institutions Code.

granted Mother monitored visits, three times a week, two hours per visit, with DCFS being given discretion to liberalize. Mother was permitted daily, monitored telephone contact with Shane.

Mother appealed the court's jurisdictional and dispositional orders, arguing insufficient evidence supported them. (*L.A. Cty. Dep't of Children & Family Servs. v. A.P. (In re S.P.)* (2018) 2018 Cal.App.Unpub. LEXIS 209, *1.) She also contended the notices sent by DCFS to the various tribes were inadequate. (*Ibid.*) In an unpublished opinion, we affirmed the jurisdictional and dispositional orders but agreed the ICWA notices were deficient and "remanded to the juvenile court with directions to comply with the inquiry and notice provisions of the ICWA." (*Id.* at pp. *14–*15.) After remand, the court ordered DCFS to "give proper ICWA notice" and to "submit the completed proper ICWA notice" with the next supplemental report. The parties agree there is no evidence DCFS complied with the court's order.

B.  *The Court Terminates Reunification Services and Establishes a Legal Guardianship*

At an October 2018 review hearing held under section 366.22, the court terminated Mother's reunification services and set a hearing under section 366.26. The court indicated Mother's visits would be "minimum twice a week, three hours," scheduled around Shane's educational and medical needs. The court added the visits should include an "appropriate monitor" and ordered DCFS to provide a "written visitation schedule." The court also found ICWA inapplicable.

In June 2019, the court established a legal guardianship for Shane. The court's order included a written visitation schedule for Mother: "Monitored visits one time per week, Tuesdays, after school until 5:30, [and]

3

when school is not in session[,] visits are 2:00 to 5:30." The order specified where pick-ups and drop-offs were to occur and provided Mother would be permitted 15-minute phone calls with Shane, thrice weekly, between 6:30 p.m. and 7:00 p.m.

In May 2020, it was reported Mother's visits with Shane were "postponed" due to the COVID-19 pandemic. In February 2021, DCFS reported Mother had "infrequent" visits with Shane due to COVID-19. Mother still called him, and he stated he enjoyed the calls, but was "sometimes annoyed."

### C.    *Shane Refuses Visits*

In April 2021, DCFS reported Shane visited Mother monthly due to "pandemic constraints of online schooling and lack of staff to transport Shane to visit with his mother." Shane stated that "the current schedule is okay with him." However, in August 2021, DCFS reported, after visiting with Mother in March 2021, "Shane has declined wanting to have visits with his mother." DCFS "inquired monthly" whether Shane wanted to visit, and Shane declined, stating he did not like the way Mother spoke to him on the phone, and the visits were "boring." Shane rejected DCFS's suggestion of reducing the duration of the visit and had no suggestions of his own on how to improve the visits. DCFS noted Shane maintained "weekly telephonic contact," although the frequency appeared to be declining. Shane's refusal to visit Mother continued through February 2022.

At a February 17, 2022 review hearing, Mother's counsel informed the court Mother was "not getting in-person visits" and requested a "written visitation schedule." Shane's counsel asked the court to consider Shane's wishes because he was almost 16 years old, and requested the court "keep

4

things as is." The court ordered "visitation remains unchanged," but gave DCFS "discretion to liberalize." The court noted Shane had made significant progress over the last couple of years and while the court did not want to discourage contact between Shane and Mother, the court understood visits were "not very pleasant for him at times." The court remarked: "Maybe shorter contact may be appropriate. I'll leave that to the Department's discretion." The minute order from the hearing stated: "MOTHER[']S VISITS REMAIN IN FFE"[3] and "DEPT HAS DISCRETION TO LIBERALIZE[] VISITS." Mother timely appealed.

## DISCUSSION

A. *The Court Did Not Err in Reaffirming Its Visitation Order*

At the February 17, 2022 hearing, Mother's counsel informed the court Mother was "not getting in-person visits" and requested a "written visitation schedule." After the court ordered its previous visitation order would remain in full force and effect, it hypothesized shorter visits might encourage Shane to agree to visitation, but declined to order shorter visits, leaving the decision to DCFS's discretion. Mother argues in doing so, the court erred because it "[t]acitly delegated to Shane and the DCFS to determine if and when visitation took place." Mother also argues the court erred by not considering other potential orders that could have encouraged Shane to agree to visit. We discern no error.

We find instructive the case of *In re Sofia M.* (2018) 24 Cal.App.5th 1038. There, a 12-month review hearing occurred three months after the dependent teenager had begun refusing to visit with her mother, and the

---

[3]    Presumably, FFE stands for "full force and effect."

mother's counsel asked the court for "'the visits outlined in'" a previous order. (*Id.* at p. 1043.) The court granted the request. (*Ibid.*) But visits still did not occur. (*Ibid.*) On appeal, the mother contended the court erred by failing to "enforce its visitation order." (*Id.* at p. 1044.) The appellate court rejected the contention, holding the juvenile court had properly ordered visitation. (*Id.* at p. 1046.) The appellate court stated if the mother had wanted a different order that would encourage the child to agree to visitation, it was "the parent's burden to request a specific type of enforcement, or a specific change to the visitation order. Absent a request, it is not the court's burden to sua sponte come up with a solution to the intractable problem of a child's steadfast refusal to visit a parent. Trial judges are not mental health experts, nor child behavior experts." (*Ibid.*) In other words, "[t]he court does not err by failing to do that which it is not requested to do." (*Ibid.*)

Mother asks us to "[c]ompare" the efforts made by the juvenile court here with the orders made by the juvenile court in *In re S.H.* (2003) 111 Cal.App.4th 310 to encourage visitation, and suggests the court here "shirked its duties" by failing to make such orders. We disagree. *S.H.* does not require a juvenile court to consider visitation orders the parties did not request. The fact that the juvenile court in *S.H.* made orders Mother considers "helpful" has no bearing on whether the juvenile court in this case erred by not issuing such orders.

Here, Mother's only request to the juvenile court was to issue a written visitation schedule. The court granted her request by reiterating that the previous schedule it had issued remained in full force and effect. Far from delegating to Shane or DCFS the power to determine if and when visits would occur, the court ordered visits would occur "one time per week, Tuesdays, after school until 5:30, [and] when school is not in session[,] visits

6

are 2:00 to 5:30." In this case, the court order provides visitation must take place and gives DCFS the ability to liberalize visitation. The order does not allow Shane or DCFS to do away with the visitation. To the extent Mother wanted the court to consider other orders to encourage Shane to agree to this schedule, the burden was on her to make a specific request. She did not. We agree with *Sofia M.* The juvenile court did not err by failing to do what it was not requested to do.

        B.    *Remand for ICWA Compliance Is Warranted*

After our remand in 2018, the juvenile court ordered DCFS to "give proper ICWA notice" and to "submit the completed proper ICWA notice" with the next supplemental report. Both parties agree there is no evidence DCFS complied with this order. Nevertheless, in October 2018, the court found ICWA inapplicable.

On appeal, Mother asks us to remand and order the juvenile court "to comply with the January 11, 2018 remand instructions of this Court of Appeal" and "to also include proper inquiry of all available relatives under the ICWA." In its appellate brief, DCFS "concedes this issue and requests the Court conditionally affirm the juvenile court's visitation orders but remand the matter to the juvenile court for compliance with the ICWA inquiry and notice provisions." We agree remand is warranted.

//

//

//

//

7

## DISPOSITION

The court's February 17, 2022 order is conditionally affirmed. This matter is remanded to the juvenile court with directions to order DCFS to comply with the inquiry and notice provisions under ICWA and its related California statutes. DCFS shall thereafter inform the juvenile court of its actions and findings. The court shall hold a hearing to determine whether the ICWA inquiry and notice requirements have been satisfied and whether Shane is an Indian child. If the court finds he is an Indian child, it shall proceed in conformity with ICWA and related California law. Mother shall be notified of all hearings related to this remand and shall have the right to appear and be represented by counsel.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.*

We concur:


CURREY, Acting P. J.


MORI, J.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.